UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

KEVIN E. WITCHER and
BOBBY BURNS

    Plaintiffs

                                            Civil Action No. 2:06-cv-00947

vs.

BAYER CROPSCIENCE LP,
Its agents, employees, and those
Acting in concert with Defendants,

    Defendant.

## *BAYER CROPSCIENCE LP REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

       As noted in Defendants' Motion to Strike filed on January 28, 2008, Plaintiffs' Reply to Defendants' Motion for Summary Judgment was not timely filed and should be stricken from the record leaving Defendants' motion unopposed.

       Should the Court permit the late filing of Plaintiffs' reply, Defendants take issue with several statements contained therein.

       *a)*     *Defendants Motion is not premature.* FRCP 56 states in pertinent part: "(a) party against whom relief is sought may move *at any time* …for summary judgment on all or part of the claim." (emphasis added). On that basis alone the motion is timely.

       In addition however, Plaintiff argues that Defendants' motion should be denied as premature on the basis that defendant will be taking evidentiary depositions. Plaintiffs have had the opportunity to take discovery depositions of the witnesses who would testify at trial (whether in person or by evidentiary videotape deposition) and declined to do so. The plaintiffs cannot

{R0281111.1}                                             1

forestall a motion for summary judgment by asserting that trial testimony may yet support their claims. Was that the law, no motion for summary judgment could ever be properly filed. As set forth in Argument section (a) of Defendants' Memorandum in Support of Motion for Summary Judgment, the motion is entirely proper, and should be granted, where the evidence developed during discovery shows that no dispute exists to any material fact and a party is entitled to judgment as a matter of law. In this case, the facts developed during discovery show that the plaintiffs are unable to present a prima facie case at trial, and the Defendants are entitled to judgment. *Dobson v. Eastern Associated Coal Corp.* 188 W. Va. 17, 422 S.E.2d 494 (1992); *See City of Ripley v. West Virginia Human Rights Commission,* 179 W. Va. 375, 369 S.E.2d. 226 (1988).

   *b)*  *The deposition of Alfred Hill is neither a surprise nor subject to a Request for Production.* At the time the plaintiffs' charges were pending before EEOC, plaintiffs' counsel represented not only Mr. Witcher and Mr. Burns, but also Mr. Hill. As such, she is intimately familiar with not only the claims made by Mr. Hill in his separate suit but the evidence which purports to support those claims. In fact, it must be assumed that plaintiff's counsel (who counted Mr. Hill among her clients) has obtained far more information from Mr. Hill than has defense counsel (who has simply taken Mr. Hill's deposition). Further, both the plaintiffs and their counsel are well aware Mr. Hill has knowledge of the facts of this case, since he was a party with them when the case was pending before EEOC. Finally, plaintiffs have listed Mr. Hill as a witness in their behalf in this matter and it must be assumed they did so with full knowledge of his potential testimony. To assert that Mr. Hill's testimony is somehow a surprise is disingenuous.

Further, a deposition taken in separate litigation is not a document encompassed within a Request for Production directed to a party as contemplated by FRCP 34.[1] Nowhere in plaintiffs' reply do they take issue with any testimony given by Mr. Hill.

***c) Mr. Burns was unable to benefit from a severance package payment due to his pending suit.*** This assertion is false. As with all severance packages, the one which Mr. Burns voluntarily elected to accept included more than a potential severance payment. He was able to elect to leave voluntarily in the midst of reductions in force and the uncertainty which goes along with them. As part of the severance package, all employees were offered the opportunity to obtain generous severance payments. As consideration for those payments, however, employees were required to sign a release of claims. Any employee could elect not to execute a release and waive the severance payments in order to retain his or her right to sue the company for any perceived wrong. Mr. Burns elected that course. He cannot now use that election as the basis for opposing Defendants' motion or as the basis for any claim.

***d) "Complaints" by the plaintiffs or other employees do not support a conclusion that discrimination has occurred.*** The law is clear that hostility in the work environment must be proven before a plaintiff can state a claim. *Dobson v. Eastern Associated Coal Corp.* 188 W. Va. 17, 422 S.E.2d 494 (1992); *See City of Ripley v. West Virginia Human Rights Commission,* 179 W. Va. 375, 369 S.E.2d. 226 (1988). The fact the plaintiff or co-workers complained is of no moment. As discussed at length in Defendants' Memorandum in Support, each and every specific complaint lodged by either Mr. Burns or Mr. Witcher was dealt with by their employer. When Burns first complained about his co-worker, the other employee was immediately told by their supervisor to stop any negative conduct toward Burns. No further incident occurred for

---

[1] Plaintiffs' counsel does not assert that a copy of Mr. Hill's deposition has ever been requested from Mr. Hill or his current counsel. Had counsel requested the transcript, it is likely it would have been provided since it is not subject to seal or confidentiality in the Circuit Court of Kanawha County.

more than 10 years. When the same co-worker "whistled Dixie" in Burns' presence, the co-worker was disciplined. Though plaintiff Witcher claims that he was discriminated against in the course of an investigation surrounding the "C-100 Reactor," the undisputed evidence shows that he was neither criticized in his work nor singled out for disciplinary action.

What is not addressed to any degree in plaintiffs' Reply is the fact that on each and every occasion when an employee followed the Defendant's procedure and reported any improper conduct, the designated human resources representatives 1) received the complaint, 2) conducted an appropriate investigation, 3) imposed appropriate discipline when a violation of company nondiscrimination policies was found and the violator could be identified, 4) where the violator could not be identified, took available steps to remind employees of their responsibilities and monitor for any further violations, and 5) met with the complaining employee to report findings and remedial actions. Nowhere in their Reply do plaintiffs deny that the internal company complaint processes, including but not limited to the applicable collective bargaining agreement, provided an effective process for addressing their complaints. Neither brought the complaints which are the basis for this suit to the company through those procedures, however. As detailed in Defendants' Memorandum in Support, the plaintiffs' failure to invoke and exhaust their available internal processes and remedies bars their claims. *Farragher v. City of Boca Raton,* 524 U.S. 775, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998).

*e) **Defendants prepared the investigative report related to the C-100 Reactor incident in anticipation of litigation.*** This assertion is simply ludicrous, and is flatly contradicted by the testimony given by both plaintiffs at deposition. Both plaintiffs had copies of the investigative report contemporaneously with the ongoing investigation. Witcher TR. 85 – 98, Document numbers 0014 – 0020 provided by plaintiffs in response to Defendants' Requests for Production.

Witcher's testimony indicates that the vast majority of the information he has regarding the incident came "second hand" through conversations with Alfred Hill and Paul Davis. Id. In fact, Alfred Hill prepared his own "summation" of the incident, provided it to Ms. Joyce Adkins in the company human resources department and discussed it with her before the investigation had been completed. Deposition of Alfred Hill, Pg. 84 – 90; Ex. 10. Witcher has testified that the investigation began even before he was sent to assist in resolving the equipment problem. Witcher TR. 95. In fact, it was Paul Davis who told Witcher that an investigation was to be conducted even before the inquiry began. Witcher TR. 91. To say that the report was prepared after the fact and in anticipation of litigation is to mislead this Court.

>    f) *Neither plaintiff has suffered any adverse employment action.*

Neither plaintiff in this case can show that he has suffered any adverse employment action, an essential element of their respective claims. Witcher remains employed under the same terms and conditions which apply to all similarly situated employees, black and white alike.

In the case of plaintiff Burns, every specific incident which he claims to have been discriminatory has been resolved. When a co-worker and Burns first came into conflict, and that conflict was reported to a supervisor, the supervisor immediately cautioned the co-worker to cease the conduct. It did not recur for more than 10 years. When a second incident between the two was reported to the human resources department, the co-worker was issued discipline. When Burns complained about receiving discipline due to his failure to appear for overtime as scheduled, the discipline was reduced to an "oral counseling" which is not disciplinary under the company's policies. Burns simply elected to retire.

As set forth in detail in Argument section (a)(2) of Defendants' Memorandum in Support, plaintiffs are unable to present evidence of any hostility occurring within the statutory limitations period. Even if they were improperly permitted to introduce evidence of allegedly discriminatory events predating the limitations period, Burns has identified only 2 prior events in the course of nearly 30 years, and Witcher has identified none. Rather, they rely on their perceptions that the environment was hostile.

This case comes down to a rather simple analysis of perception versus reality. While the plaintiffs *believe* they have been victims of discrimination, they are unable to muster *proof to support that belief.*[2] The "bad actors" e-mail sent by Mr. Gary Darkens (and described in Defendants' Memorandum in Support at pages 2 – 3) is a perfect example of how the plaintiffs' perceptions lack any basis in reality. While Mr. Darkens' e-mail does not so much as mention employees, both plaintiffs (at the urging of others) not only perceived the message to be directed at employees, but went so far as to believe it singled out *black employees* for criticism. Even after Mr. Darkens clarified the intent, and without the benefit of any investigation on their part, the plaintiffs continue to believe the e-mail is racially discriminatory and cite it as the basis for their claims. Any reading of the correspondence shows that their perceptions are erroneous.

Other testimony in the case graphically demonstrates that perceptions held by the Plaintiffs were based upon personal bias and their failure to consider any information which was contrary to their perceptions. For example, Burns contends that the EEOC investigator who handled the precursor charge in this case "didn't do anything" to investigate his claims. Burns TR. 101. In forming that belief, Burns was unaware that the investigator had spent 3 full days in Charleston reviewing company records and interviewing witnesses. Burns TR. 102. Further,

---

[2] The testimony given by the Plaintiffs is usually couched in terms of what they "believe" and how they "felt" rather than founded upon any substantial evidence. Burns TR., 100, 101.

Burns had never seen any of the documents obtained by the EEOC investigator.[3] Rather than accept the fact that EEOC found no basis upon which to believe the plaintiffs had been victims of discrimination, they disregard the facts and assert EEOC failed to properly investigate their charge.

Finally, plaintiff Witcher contends that he documented instances of harassment or discrimination throughout his career at the plant, and that he was told by several black employees "to document things that happen to you." Witcher TR. 63 – 65. Witcher testified he had, indeed, kept extensive notes in "little notebooks" though out his career, because "what you document and what you keep means just as much in a court of law as what the company might document or the company might keep…". Witcher TR. 65 – 66. All of these documents purportedly relate to instances of harassment or discrimination to which Witcher contends he was subjected. Now, however, Witcher contends that he can no longer locate or produce these documents. Witcher TR. 63.

The plaintiffs have presented no evidence supporting their claims in this case, there is no dispute regarding any material fact, and the Defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment should be granted.

---

[3] Virtually the same documents were provided by counsel for the defendants for review and copying by the plaintiffs in this case.

                                **BAYER CROPSCIENCE LP**
                                By Counsel

<u>/s/Joseph M. Price (#2981)</u>
David S. Russo (#5087)
Robinson & McElwee PLLC
P.O. Box 1791
400 Fifth Third Center
700 Virginia Street East
Charleston, WV 25326
(304)-344-5800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

KEVIN E. WITCHER and
BOBBY BURNS

    Plaintiffs

                                      Civil Action No. 2:06-cv-00947

vs.

BAYER CROPSCIENCE LP,
Its agents, employees, and those
Acting in concert with Defendants,

    Defendant.

### *CERTIFICATE OF SERVICE*

    I, Joseph M. Price, Counsel for Bayer CropScience LP, do hereby certify that on the 8th day of February, 2008, I electronically filed the foregoing **BAYER CROPSCIENCE LP RESPONSE TO PLAINTIFFS' REPLY TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of this Court using the CM/ECF system which will send notification of such filing to all counsel of record and that there are no non-CM/ECF participants in this matter.

                                      Eunice L. Green, Esq.
                                      P. O. Box 893
                                      Dunbar, WV 25064

/s/Joseph M. Price (#2981)
David S. Russo (#5087)
Robinson & McElwee PLLC
P.O. Box 1791
400 Fifth Third Center
700 Virginia Street East
Charleston, WV 25326
(304)-344-5800
Counsel for Defendants